[Cite as *State v. Griffon*, 2026-Ohio-2610.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 115556 |
| JARYL GRIFFON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 9, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-689009-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Andrew Szczepanik, and Liam Blake, Assistant Prosecuting Attorneys, *for appellee.*

Russell S. Bensing, *for appellant.*

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant Jaryl Griffon ("Griffon") appeals from his convictions for drug trafficking and related offenses following a jury trial. For the following reasons, we affirm.

## I. Factual and Procedural History

{¶ 2} On February 9, 2024, a Cuyahoga County Grand Jury indicted Griffon on Count 1, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2); Count 2, aggravated possession of drugs in violation of R.C. 2925.11(A); Count 3, trafficking in harmful intoxicants in violation of R.C. 2925.32(A)(1); Count 4, aggravated possession of drugs in violation of R.C. 2925.11(A); and Count 5, possessing criminal tools in violation of R.C. 2923.24(A). Counts 1 and 2 carried major-drug-offender ("MDO") specifications, and Counts 1, 2, 4, and 5 carried forfeiture specifications related to a cell phone and an iMac computer.

{¶ 3} Griffon originally pleaded not guilty to all charges in both cases.

{¶ 4} Griffon filed a motion in limine related to evidence of Griffon's text message conversations related to the sale or potential sale of drugs. The court denied this motion, and the case proceeded to a jury trial.

{¶ 5} The State called Detective Matthew Mindlin ("Detective Mindlin") to testify in its case-in-chief. Detective Mindlin testified that he worked as a detective in the narcotics unit of the Parma Police Department. Detective Mindlin testified that part of his job involved investigating tips from confidential informants ("CIs") and confidential reliable informants ("CRIs"). He explained that a CI was someone whose information has not previously been used by law enforcement or verified, as opposed to a CRI, whose information has been relied on by law enforcement multiple times. Detective Mindlin also explained that based on tips his unit received, they would typically conduct surveillance and then often conduct a

purchase of drugs, in which law enforcement would meet with the informant, give them an amount of money, and send them to purchase illegal drugs from the target of the investigation. Following the controlled buy, law enforcement would test the drugs. Detective Mindlin testified that typically, after two successful controlled buys from a target, law enforcement would obtain a search warrant in order to "try to find the rest of the drugs that you are purchasing from, and also try to subdue whatever drug trafficking in said area that it's happening." (Tr. 269.)

{¶ 6} Detective Mindlin testified that he was involved in the investigation of Griffon in 2023, and he identified Griffon at trial. Detective Mindlin testified that Detective Eric Neff ("Detective Neff") was the lead detective in the case, and Detective Mindlin primarily conducted surveillance of Griffon's residence and assisted in facilitating controlled buys from Griffon. Detective Mindlin testified that as part of their investigation, two controlled buys of gamma hydroxybutyrate ("GHB") from Griffon were conducted. Following those controlled buys, law enforcement obtained a search warrant for Griffon's apartment in Cleveland, Ohio. Detective Mindlin testified that he participated in the execution of the search warrant; he detained Griffon and assisted in the search of the apartment. Detective Mindlin testified that GHB was found in Griffon's apartment.

{¶ 7} The State also called Parma Police Sergeant Robert Kalal ("Sergeant Kalal"), who testified that in November 2023, he was a sergeant in the narcotics unit and oversaw the investigation into Griffon. Sergeant Kalal testified that when the search warrant was executed, he recovered Griffon's cell phone from his person.

{¶ 8} The State called Parma Detective Neff who testified that he was the lead detective in the underlying case. Detective Neff testified that in October 2023, a confidential informant reached out to him with a tip that Griffon was selling GHB out of his home. Based on this tip, Detective Neff created a photo lineup that was shown to the informant to confirm Griffon's identity. The informant then contacted Griffon via text message to ask if he had GHB for sale; Griffon confirmed that he did, and a specific amount and price were discussed via text message. Detective Neff testified that based on this, a controlled buy was conducted in which the informant purchased GHB from Griffon. Based on the success of this controlled buy, a second controlled buy was conducted several weeks later.

{¶ 9} Detective Neff testified that based on the two controlled buys, he obtained a search warrant for Griffon's home. Detective Neff testified that law enforcement executed the search warrant on November 21, 2023. According to Detective Neff, the search warrant was executed by himself, other detectives from his unit, patrol officers from Parma, and two Cleveland detectives. Body-camera footage from the execution of the search warrant was played without audio during the State's direct examination of Detective Neff. Detective Neff testified that Griffon and another adult male were in the home while the search warrant was executed; Detective Neff interviewed Griffon in the hallway outside Griffon's apartment; during this interview, Griffon asserted that he was a maintenance worker for his building and used the liquids founds in his apartment to clean graffiti off of the building's walls.

{¶ 10} Detective Neff testified that they discovered a 55-gallon drum of Butanediol, two containers of GHB, and methamphetamine in Griffon's apartment. He detailed other items recovered from the apartment, including an Apple computer and Griffon's iPhone. Detective Neff testified that he extracted data from Griffon's phone, and excerpts from three separate message conversations from the Telegram messaging app were introduced into evidence at trial. Detective Neff testified that he believed that each of the conversations related to individuals discussing the purchase of GHB from Griffon.

{¶ 11} Griffon's counsel objected to the admission of the text messages related to controlled buys at trial, renewing the arguments made in his motion in limine; the court overruled this objection.

{¶ 12} The State called Leslie Dardzinski ("Dardzinski"), who testified that she is employed as a forensic scientist at the Cuyahoga County Medical Examiner's Office. Dardzinski testified that she was assigned to Griffon's case. As part of this assignment, Dardzinski tested various substances recovered from Griffon's home and prepared a laboratory report identifying the substances to a reasonable degree of scientific certainty. Dardzinski testified that one plastic jug with liquid was identified as 5,702.1 grams of GHB and a second plastic jug with liquid was identified as 17,656.2 grams of GHB; Dardzinski identified GHB as a Schedule II drug. She testified that a third item, a plastic bag containing a rubber container, was identified as 2.96 grams of methamphetamine, and a metal lockbox containing small clear crystalline particles was identified as 0.40 grams of methamphetamine.

Dardzinski also testified that a plastic jug with liquid that had been removed from a 55-gallon drum in Griffon's apartment was identified as 34,994.3 grams of 1,4-Butanediol ("Butanediol"). According to Dardzinski, Butanediol is identified as a harmful intoxicant with a similar chemical structure to GHB.

{¶ 13} The State called a neighbor of Griffon's who testified that in 2023, he was living in the same building as Griffon and was president of the homeowner's association ("HOA"). The neighbor testified that Griffon owned a unit in the building, and he identified Griffon at trial. He also testified that Griffon had previously served as the HOA's treasurer. The neighbor testified that the HOA hired contractors for building-related maintenance, that Griffon was not the building's maintenance man, that the neighbor had never noticed graffiti anywhere around the building, and that he had never observed Griffon removing any graffiti. He further testified that because Griffon regularly had people coming and going from his apartment at all hours, he believed Griffon compromised the safety of the building.

{¶ 14} At the close of the State's case, defense counsel made a Crim.R. 29 motion for acquittal. The court denied this motion.

{¶ 15} The jury returned a verdict of guilty to aggravated-drug trafficking, aggravated-drug possession, and possession of criminal tools, together with the attendant specifications. The jury returned a verdict of not guilty on Count 3, trafficking in harmful intoxicants.

{¶ 16} On September 2, 2025, the court sentenced Griffon to 11 to 16 and one-half years in prison on Count 1, aggravated-drug trafficking, as well as a

mandatory fine of $10,000. The court also sentenced Griffon to 12 months in prison on Count 4, aggravated-drug possession, and ordered this sentence to be served concurrently to the sentence imposed on Count 1. Counts 2 and 5 merged into Count 1.

{¶ 17} Griffon appealed. He now raises two assignments of error for our review:

> I. The trial court erred in admitting evidence of text messages concerning controlled buys of narcotics with which Defendant was not charged, and committed plain error in admitting evidence of the controlled buys in violation of Evid.R. 404(B).

> II. Defense counsel rendered ineffective assistance of counsel to the prejudice of Defendant by failure to object to evidence of controlled buys of narcotics with which Defendant was not charged, in derogation of Defendant's right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

## II. Law and Analysis

## A. Evidence of Controlled Buys

{¶ 18} In his first assignment of error, Griffon challenges the admission of evidence related to controlled buys. Specifically, Griffon argues that (1) the trial court erred and violated Evid.R. 404(B) when it admitted evidence of text messages concerning controlled buys of narcotics for which Griffon was never charged and (2) the trial court committed plain error when it admitted testimony from Detective Neff concerning both how controlled buys are conducted in general and how they were conducted in the instant case.

**{¶ 19}** Here, Griffon argues that the admission of both forms of evidence related to the controlled buys — the text messages and Detective Neff's testimony — was error because it violated Evid.R. 404(B)'s prohibition on other-acts evidence. We disagree.

**{¶ 20}** All relevant evidence is admissible unless otherwise excluded by law. Evid.R. 402. Under Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Although relevant, evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

**{¶ 21}** Evid.R. 404(B)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The rule further provides that this evidence may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2).

**{¶ 22}** The admissibility of other-acts evidence is a question of law that appellate courts review de novo. *State v. Hartman*, 2020-Ohio-4440, ¶ 22. However, although Evid.R. 404(B) is Griffon's basis for challenging both the text messages and Detective Neff's testimony, our standard of review is not identical for both kinds of evidence. With respect to the text messages, the record reflects that

the State introduced excerpts from three different text message conversations between Griffon and three individuals related to the sale of drugs. The text messages were the subject of both a defense motion in limine prior to trial and an objection during trial, and as such, we review their admission pursuant to Evid.R. 404(B) de novo. With respect to the testimony from Detective Neff, however, defense counsel did not object to the introduction of this evidence during trial. Because this evidence was admitted without objection at trial, Griffon has forfeited all but plain error. *State v. McInnes*, 2026-Ohio-734, ¶ 61 (8th Dist.), citing *State v. Rogers*, 2015-Ohio-2459, ¶ 3 and 21 (Failure to object to an error in the trial court forfeits all but plain error on appeal.). Under both standards, the evidence was properly admitted.

{¶ 23} Evid.R. 404(B)'s prohibition against other-acts evidence only applies to limit the admission of other-acts evidence that is "extrinsic" to the crime charged. *State v. Jones*, 2018-Ohio-498, ¶ 140 (8th Dist.), *rev'd on other grounds*, 2020-Ohio-6729. Thus, "'Evid.R. 404(B) does not apply when the acts are intrinsic as opposed to extrinsic, i.e., the acts are part of the events in question or form part of the immediate background which forms the basis for the crime charged.'" *Id.*, quoting *State v. Crew*, 2010-Ohio-3110, ¶ 99 (2d Dist.).

{¶ 24} Here, both the text messages and the testimony concerning the controlled buys were relevant and necessary "to explain the basis for the search warrant and to 'tell[] the story of these crimes.'" *State v. Thompson*, 2025-Ohio-4359, ¶ 87 (1st Dist.), quoting *State v. Knuff*, 2024-Ohio-902, ¶ 118. The evidence regarding controlled buys was necessary to explain the investigation into Griffon,

and specifically to establish the basis for the search warrant, the execution of which was the source of the majority of the State's evidence in the underlying case. Therefore, Evid.R. 404(B) was inapplicable to the evidence in question. Further, this court has previously found that "there is no case law authority to support [a] claim that [] police officers cannot testify about a controlled buy as part of their drug investigation." *State v. Payne*, 2019-Ohio-4158, ¶ 59 (8th Dist.).

{¶ 25} Because Evid.R. 404(B) is inapplicable to the text messages, we cannot say that their admission was error. Evid.R. 404(B) is likewise inapplicable to Detective Neff's testimony, and furthermore, even if the testimony did constitute other-acts evidence of the kind prohibited by Evid.R. 404(B)(1), we cannot find that its admission amounted to plain error. For these reasons, Griffon's first assignment of error is overruled.

## B. Ineffective Assistance of Counsel

{¶ 26} In Griffon's second assignment of error, he argues that he received ineffective assistance of counsel when his trial counsel failed to object to the introduction of evidence related to the controlled buys for which he was not ultimately charged. Specifically, Griffon argues that although trial counsel objected to the introduction and admission of text messages related to the controlled buys, he did not otherwise object to any of the evidence related to the controlled buys.

{¶ 27} To establish ineffective assistance of counsel, "a defendant must prove (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial

would have been different." *State v. Houston*, 2018-Ohio-3043, ¶ 18 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668 (1984). "'Defense counsel's performance must fall below an objective standard of reasonableness to be deficient for purposes of ineffective assistance of counsel.'" *State v. Linville*, 2017-Ohio-101, ¶ 6 (8th Dist.), quoting *State v. Jones*, 2016-Ohio-688, ¶ 14 (8th Dist.). Because objecting is a tactical decision, "'"the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel."'" *State v. Washington*, 2024-Ohio-1056, ¶ 38, quoting *State v. Frierson*, 2018-Ohio-391, ¶ 25 (8th Dist.), quoting *State v. Conway*, 2006-Ohio-2815, ¶ 103.

{¶ 28} Here, Griffon is unable to satisfy either requirement of his ineffective-assistance claim. As discussed in our analysis of Griffon's first assignment of error, the admission of evidence related to the controlled buys did not violate Evid.R. 404(B) and was not otherwise plain error. Therefore, we cannot say that counsel's decision not to object to the admission of this evidence fell below an objective standard of reasonableness. Further, given the extensive and uncontroverted evidence presented at trial, we cannot say that there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. For these reasons, Griffon has not established that he received ineffective assistance of counsel. Griffon's second assignment of error is overruled.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EILEEN A. GALLAGHER, J., CONCUR